**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

IN RE:

MANALAPAN MINING COMPANY, INC.                              CASE NO. 13-61501

DEBTOR

IN RE:

LEFT FORK MINING COMPANY, INC.                              CASE NO. 13-61502

DEBTOR


**MEMORANDUM OPINION**
**AND ORDER**

**I.     PROCEDURAL HISTORY**

On March 18, 2015, the Court entered an Order [Doc. 141 in Case No. 13-61501] approving the request of the chapter 7 trustee of Debtor Manalapan Mining Company, Inc. ("Manalapan") to transfer certain mining permits free and clear of all liens pursuant to 11 U.S.C. § 363.  The transfer of mining permits is part of an agreement that will result in the release of bonds with the Commonwealth of Kentucky backed by various Certificates of Deposit held by the Bank of Harlan, totaling approximately $1,750,000.00.  The Court entered an Order [Doc. 58 in Case No. 13-61502] granting a similar request by the chapter 7 trustee[1] of the Debtor Left Fork Mining Company, Inc. ("Left Fork") on the same day that will result in the release of bonds backed by Certificates of Deposit totaling $56,000.00.

On June 8, 2015, the Trustee of Manalapan filed: (1) a Motion to Approve Assignment of Lease [Doc. 158 of Case No. 13-61501]; (2) Motion to Shorten Time [Doc. 160 of Case No. 13-

---

[1] James R. Westenhoefer is the chapter 7 trustee in both cases.

1

61501]; and (3) Motion to Pay Filing Fee from Estate Funds [Doc. 159 of Case No. 13-61501]. The same day the Trustee of Left Fork filed similar motions, including: (1) a Motion to Approve Assignment of Lease [Doc. 59 of Case No. 13-61502]; (2) Motion to Shorten Time [Doc. 61 of Case No. 13-61502]; and (3) Motion to Pay Filing Fee from Estate Funds [Doc. 60 of Case No. 13-61502].

The motions relate to the assignments of the Manalapan and Left Fork mining permits previously approved by the Court. The motions in each respective case, the objections related thereto, and the Court's rulings are addressed separately below.

## II.  DISCUSSION

### A.  In re Manalapan Mining Company, Inc., Case No. 13-61501

Black Star Land & Mining, Ltd., a Kentucky limited partnership ("Black Star"), objected [Doc. 166] to the Trustee's Motion to Approve Assignment of Lease [Doc. 158]. Although the Court granted the Trustee's Motion to Shorten Time, it ordered the parties to file supplemental briefs [Doc. 172]. In response, Black Star filed a Brief in Support of its Objection [Doc. 175], but the Trustee did not file a supplemental brief.

Black Star argues the Trustee may not assign the Mining Lease dated September 10, 1992, by and between Black Star, as Lessor, and RB Coal Company, Inc., as Lessee[2] (the "Manalapan Mining Lease"), a complete copy of which was attached to Black Star's Brief in Support [Doc. 175]. Black Star argues § 365, and not § 363, controls and the Trustee may not assign the Manalapan Mining Lease because it was rejected as a matter of law within 120 days following the petition date pursuant to § 365(d)(4). Black Star also asserts that transfer

---

[2] No document was provided that designates the Debtor as the current holder of the Lessee's interest. Black Star did not raise this issue and instead treats the Debtor as the current interest holder. Therefore, this evaluation assumes any assignment or other transfer document does not have terms that affect the issues decided hereby as one party or the other would have supplied it.

2

is not allowed under § 363 regardless. The Trustee counters that the transfer is allowed under § 363 and he is not arguing for transfer under § 365.

>    i.    **Section 365 Does Not Control Because the Manalapan Mining Lease is Not a Lease Under Kentucky Law**.

A transfer of an interest in coal under Kentucky law is generally considered a conveyance of an interest in real property. *Sloan v. Hicks (In re Becknell & Crace Coal Company, Inc.)*, 761 F.2d 319, 321 (6th Cir. 1985); *Cox v. Philbeck (In re Philbeck)*, 145 B.R. 870, 871 (Bankr. E.D. Ky. 1992). "Regardless of the agreement's denomination and hybrid characteristic, under Kentucky law 'what is commonly termed a coal mining lease is regarded as the conveyance of an estate or interest in the minerals as land unless the terms of the instrument require a different construction.'" *Becknell*, 761 F.2d at 321 (*quoting Johnson v. Coleman,* 288 S.W.2d 348, 349 (Ky. 1956)). Therefore, to determine if the Manalapan Mining Lease requires a different construction than a conveyance of interest in real property, it is necessary to evaluate its terms.

*Philbeck* is instructive. The bankruptcy court in *Philbeck* evaluated the terms of the coal lease and concluded it was a transfer of a real property interest. The coal lease in *Philbeck* had an original term of four years and then as long as coal was produced from the premises. It also included a covenant from the lessor to lessee that "...he is seized with a good, fee simple title to all the minable and merchantable coal embraced within this lease…" Further, there were no unperformed obligations on the part of the defendant that would place the contract within the definition of an executory contract. *Philbeck*, 145 B.R. at 871.

Some terms of the Manalapan Mining Lease might suggest it is a lease. The grant in the Manalapan Mining Lease provides: "… Lessor does hereby demise and let unto Lessee upon and subject to the terms and conditions and reservations and exceptions hereafter set forth, … the exclusive right and privilege to mine, remove and sell all mineable and merchantable coal …"

[Doc. 175-1 at 1]. The terms "demise" and "let" are terms used to signify a lease or property. Also, the improvements (*i.e.,* a wash plant) accrue to the Lessor. Although these terms could lead to a conclusion the Manalapan Mining Lease is a true lease, it is significant that the documents other courts reviewed were also called "leases" and could have had this same type of granting language.

Further, unlike *Philbeck*, the Lessor of the Manalapan Mining Lease did not warrant fee simple title. The Lessor reserved all other mineral and surface rights, transferring only the right to mine coal. But these terms are not considered significant enough to lead to the conclusion that this is a true lease, as it is possible to transfer real property in any case without warranty of title and with the transferee assuming the risk. Also, reserving non-coal interests does not affect the transfer of the coal seams.

Despite those terms, the overall agreement contains usual and standard terms for a coal lease, thus leading to the conclusion the Manalapan Mining Lease is a conveyance of an interest in real property that is not treated as a true lease under Kentucky law. The term of the lease only runs out when "all the mineable and merchantable goal is removed …" [Doc. 175-1 at 2]. The Lessee must pay property and other coal-related taxes. *Id.* at 10. Also, the bulk of the remaining provisions, such as the right to review and audit mining information, the right to inspect and the right to perform the Lessee's duties exist only to protect the Lessor's right to payment and the reserved interests. These terms do not suggest the transfer is a lease.

The agreement is also not an executory contract. The Lessee has continuing obligations under the Lease, including filing mining plans, utilizing proper mining techniques and reclamation. *Id*. at 6-10. There are no continuing obligations on the part of the Lessor. After the conveyance, the only rights of the Lessor involve assuring accurate accounting and protecting the

4

Lessor's reserved property interests.  *Id*. at 6.  These are not obligations due from the Lessor to the Lessee that would make the Manalapan Mining Lease an executory contract.

The Manalapan Mining Lease is a conveyance of a real property interest under Kentucky law and is not a lease or executory contract addressed in § 365.  Therefore, the Court will analyze the arguments against a transfer pursuant to § 363.

### ii.     The Trustee May Convey the Manalapan Mining Lease Under § 363.

The Trustee may convey assets outside the ordinary course of business if, in his business judgment, the transfer benefits the estate.  11 U.S.C. § 363(b); *see also In re Jillian's Entertainment Holdings*, 327 B.R. 616, 617 (Bankr. W.D. Ky. 2005) (*citing Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063 (2nd Cir. 1983)).  The Trustee believes the transfer puts him one step closer to assignment of certain mining permits and release of the bonds securing the reclamation obligations related to the mining permits.  When the Commonwealth of Kentucky releases the bonds, the surety company will release approximately $1,750,000.00 in cash collateral.

Black Star asserts the Trustee has not shown a benefit to the Debtor's estate, but this argument ignores the fact that the Trustee has pursued this goal through various papers and argument in this case and in the companion case, Left Fork Mining, *see infra*, since at least last year.  The Trustee is presumably seeking appropriate advice necessary to form a reasonable business judgment and his business judgment will be respected until a party comes forward with evidence to the contrary.  Arguments without support from a party that has not participated in this case until now are insufficient to discount the Trustee's reasoned business judgment.[3]

---

[3] The Trustee points out that one of the partners of Black Star was also the named representative of the Debtor. While this is not enough to show a conflict of interest, it is sufficient to allow a conclusion that Black Star was aware of the Trustee's efforts to assign mining permits and recover the cash collateral.

Black Star argues the assignee is not committed to accepting the transfer and the related mining permits. This is true, but it is also true that nothing will occur if the Trustee is not granted the authority necessary under § 363(b) to move forward with a transfer outside the ordinary course of business.

Potential defaults also do not prevent transfer of the Manalapan Mining Lease. Black Star has not declared a default or otherwise moved to enforce its rights in the event of a default. If a default is called after the assignment, then the assignee must address any issues raised. It is also not clear whether the failure to make the 2014 minimum royalty payment is a default or merely a claim against the estate (that the Trustee presumably would recover through the recoupment provision in the lease).

Black Star also points to an anti-assignment provision in Section 19 of the Manalapan Mining Lease, which provides: "(a) Lessee shall not assign this Lease or any part thereof without the prior written approval of Lessor, *which approval Lessor shall not unreasonably withhold* …" [Doc. 175-1 at 13-14]. While the Trustee cannot take advantage of § 365(f), he can use other sections of the Bankruptcy Code to transfer property despite an anti-assignment provision. *See In re Quinn*, 299 B.R. 450, 460 (Bankr. W.D. Mich. 2003), *rev'd on other grounds sub nom Teachers Insurance and Annuity Assoc. v. Bareham (In re Quinn)*, 327 B.R. 818 (W.D. Mich. 2005). The bankruptcy court in *Quinn* found this authority in § 363(b). *Id.* at 460-61.

Another court allowed transfer despite an anti-assignment provision when the only remedy was damages (*i.e.*, the lessee could not void the lease). *See In re American Home Mortg. Holdings, Inc.*, 402 B.R. 87, 102 (Bankr. D. Del. 2009). A different court found authority in § 363(f) to allow the transfer free and clear of the anti-assignment provision assuming the

6

conditions of § 363(f) are met. *In re C-Power Products, Inc.*, 230 B.R. 800 (Bankr. N.D. Tex. 1998).

It is not necessary to pick one of these options or find a different code section to refuse to recognize any impact of the anti-assignment provision on this transaction because the Lessor cannot unreasonably withhold consent. It is not just the estate that is harmed if the mining permits are lost by further delay. The Lessor's property is also harmed when the permits are lost because any new lessee must go through a potentially lengthy re-permitting process. Therefore, the only reason to withhold consent is to void the lease for the Lessor's own benefit. That is the definition of unreasonable in this context.

Black Star has not raised any issues that would call into question the Trustee's business judgment or prevent transfer of the Manalapan Mining Lease pursuant to § 363(b).

### iii. **Black Star Is Adequately Protected.**

Black Star believes it is entitled to adequate protection if the transfer occurs. 11 U.S.C. § 363(e). Section 363(e) provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

It is important to protect Black Star from any decrease in value of its property, but it does not appear transfer will result in any decrease in the value of the Manalapan Mining Lease.

Currently, Black Star is not receiving any return from the Manalapan Mining Lease. It has not taken any steps to terminate the lease, so Black Star cannot argue for a monetary payment. Further, the Trustee has indicated that, if the assignee does not pay the past due royalty, Black Star may assert an administrative claim. Although there is no assurance Black

Star would receive administrative priority upon assignment, it is highly probable that claim would not benefit the estate if the assignment does not occur and the lease and cash collateral are lost.

Black Star also seeks evidence the assignee can perform, apparently as adequate protection. Proof of ability to perform is a concept under § 365, but it is not a condition under § 363.[4] While it is possible to grant this request as adequate protection, imposing this condition and delaying a decision provides no significant benefit. Delay hurts all parties because the Commonwealth of Kentucky has indicated its intention to terminate some or all of the permits if prompt action is not taken.

With this understanding, there is no reason any information the Trustee has on the assignee, including financial and other data, should not be shared with Black Star. Therefore, the Trustee should share such information with Black Star as soon as reasonably practical. Black Star may request relief if the Trustee does not comply voluntarily, but providing the information is not a condition to the relief granted herein.

### iv. **The Trustee's Motions are Granted and Black Star's Objection is Overruled.**

Based on the foregoing, the Trustee's Motion to Approve the assignment of the Manalapan Mining Lease is granted and the objection of Black Star is overruled. The Trustee's motion to pay the filing fee from estate funds is also granted.

### B. **In re Left Fork Mining Company, Inc., Case No. 13-61502.**

Black Star and Manalapan Land Company, Ltd. (collectively, the "Left Fork Lessors") objected [Doc. 63] to the Trustee's Motion to Approve Assignment of Lease [Doc. 59]. Much like in the Manalapan Mining matter, the Court granted the Trustee's Motion to Shorten Time,

---

[4] Black Star's arguments that the Trustee is harmed by the loss of certain rights granted by § 365 now come around to contradict its position.

but required supplemental briefing before taking the matter under submission [Doc. 68]. In response, the Trustee filed a brief in support of his Motion [Doc. 74] and the Left Fork Lessors filed a supplemental brief in support of their Objection [Doc. 75].

The Left Fork Lessors argue the Trustee may not assign the Mining Lease dated September 10, 1994, by and between the Left Fork Lessors and MLC and BLS&M, as Lessors, and RB Coal Company, Inc, as Lessee[5] (the "Left Fork Mining Lease") for the same reasons Black Star objected to transfer of the Manalapan Mining Lease. The Left Fork Lessors also object because the Left Fork Mining Lease has expired by its terms.

### i.     **The Trustee May Convey the Left Fork Mining Lease Under § 363.**

The Left Fork Mining Lease could be transferrable under § 363(b) for the same reasons the Manalapan Mining Lease is transferrable but for the expiration of its term. The substantive terms that resulted in the decision the Manalapan Mining Lease is not a lease or executory contract, and is assignable pursuant to § 363, are equally applicable to the Left Fork Mining Lease.

However, the Left Fork Lessors argue that the Left Fork Mining Lease has expired. Section 2 of the Left Fork Mining Lease provides that the term expires at the end of an initial 3-year term and three 5-year extensions; *i.e.*, August 31, 2012. [Doc. 75-1 at 2]. The Trustee argues that the Lessee still has rights under the Lease because Section 18 prevents termination until all mineable coal is removed. *Id.* at 12. This is not a sound argument. Section 18 is an early termination clause, but it does not extend or contradict the clear terms of Section 2.

---

[5] Like the Manalapan Mining Lease, no document was provided that designates the Debtor as the current holder of the Lessee's interest and the Left Fork Lessors did not make this an issue. Therefore, this evaluation assumes any assignment or other transfer document does not have terms that affect the issues decided hereby as one party or the other would have supplied it.

9

The Trustee also argues that the Debtor has not surrendered the premises, which is required at the end of the term by Section 19 of the Left Fork Mining Lease. *Id*. at 12. This provision also does not extend the term of the Left Fork Mining Lease. At most, the Lessee is a holdover tenant and the Lessor must follow state law to eject it from possession.

The Trustee argues that, because the Lessee still pays property taxes and the Lessors have recognized the Debtor as the Lessee in dealings with the Commonwealth of Kentucky, the Left Fork Mining Lease is still operative. This argument, without proof, is not sufficient to find there is an unwritten extension of the term of the Left Fork Mining Lease. But it is enough to at least raise the possibility the Left Fork Mining Lease has continuing validity.

Therefore, the Trustee may assign the Left Fork Mining Lease, but he might only be assigning an already expired lease. If that is the case, there is no harm to the Left Fork Lessors.

      **ii.**    **The Trustee's Motions are Granted and the Left Fork Lessors' Objections are Overruled**.

Based on the foregoing, the Trustee's Motion to approve the assignment of the Left Fork Mining Lease is granted and the objection of the Left Fork Lessors is overruled. The Trustee's motion to pay the filing fee from estate funds is also granted.

## III. CONCLUSION

At oral argument, the parties were encouraged to discuss a global resolution. The long-term validity of the approved transfers is not assured. Resolution of all these issues in court will take time, which the parties might not have if the Commonwealth of Kentucky revokes the mining permits. Further, revocation of the mining permits is bad for the Debtor's estate as it would tie up recovery of the cash collateral. Revocation is also bad for the lessors because any subsequent lessee must go through a new permitting process that could take years. Complicating

the analysis is the state court dissolution proceedings involving Black Star. A global resolution outside of Court would benefit all.

Based on the foregoing, it is ORDERED:

1. The Trustee's Motions to Approve Assignment of the Manalapan Mining Lease [Doc. 158 of Case No. 13-61501] and Left Fork Lease [Doc. 59 of Case No. 13-61502] are GRANTED;

2. the Objections of Black Star [Docs. 158 & 175 of Case No. 13-61501] and the Left Fork Lessors [Docs. 63 & 75 of Case No. 13-61502] are OVERRULED; and

3. the Trustee's Motions to Pay Filing Fee from the Manalapan Mining Company, Inc. Estate Funds [Doc. 159 of Case No. 13-61501] and the Left Fork Mining Company, Inc. Estate Funds [Doc. 60 of Case No. 13-61502] are GRANTED.

11

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, June 19, 2015**
(grs)